IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN EDWARD GALLAGHER,  )<br>  )<br>        Plaintiff  )<br>  )<br>    vs.  )<br>  )<br>DR. WILCOX; SOUTHERN HEALTH  )<br>PARTNERS AND BUTLER COUNTY PRISON;  )<br>  )<br>        Defendants  )<br>  )<br>  )<br>  ) | C.A. 06-1206<br>Judge Terrence F. McVerry /<br>Magistrate Judge Amy Reynolds Hay<br><br><br><br><br>Re: Dkt. Nos. [15] & [18] |

<u>REPORT AND RECOMMENDATION</u>

<u>RECOMMENDATION</u>

It is recommended that the Defendants' motion to dismiss , Dkt. [15], be granted in part and denied in part. It should be granted as to all of Plaintiff's claims against Dr. Wilcox except for the claim that in early June 2006 he refused to prescribe increased insulin for Plaintiff because Plaintiff refused to pay the fee for a doctor's visit. It should be granted as to Southern Health Partners, who should be dismissed as a party defendant. In addition, the Butler County Prison should be dismissed as a party defendant pursuant to the PLRA. Finally, Plaintiff's motion for preliminary injunction, Dkt. [18], should be denied as moot.

<u>REPORT</u>

John Edward Gallagher ("Plaintiff") was, at the time of initiating this civil rights action, a prisoner at the Butler County Prison ("BCP"). He has since been released and is apparently residing in a private residence.[1] Plaintiff filed a civil rights action against Dr. Wilcox who was

---

[1] Now that Plaintiff is no longer a prisoner, he must re-apply for pauper status as a non-prisoner given that he is still obligated to pay filing fee given that his transfer out of prison means there is no prisoner trust account from which to deduct the filing fee. See, e.g., <u>Drayer v. Attorney Gen. of State of Delaware</u>, 81 Fed.Appx. 429, 431 (3d Cir. 2003)("once Drayer's fee obligations under the PLRA accrued,

the physician at the BCP, and against Southern Health Partners ("SHP"), the company contracted to provide medical care at the BCP, and also against the BCP itself. Plaintiff essentially alleges that the Defendants violated his Eighth Amendment rights when they were deliberately indifferent to his diabetes.

Because the complaint to a great extent reveals medical negligence at best, it should be dismissed for failure to state a claim upon which relief can be granted except for the claim that in June 2006, Dr. Wilcox denied Plaintiff an increase in insulin for non-medical reasons. That claim survives the motion to dismiss.

**Relevant Procedural History**

Plaintiff is proceeding pro se and has been granted IFP status. Plaintiff's complaint, Dkt. [8], was signed on July 12, 2006, and complained of events that began occurring at the BCP around February 13, 2006. Although signed on July 12, 2006, the court did not receive Plaintiff's complaint until September 13, 2006. In addition, the complaint complained of events occurring in August 2006. Dkt. [8] at 12. Hence, it is apparent that although signed in July, the complaint was not completed until sometime in August 2006 and mailed sometime thereafter. On December 20, 2006, the Court received a change of address from Plaintiff, indicating that Plaintiff was transferred to the Lawrence County Corrections Facility. On April 6, 2007, the Court received yet another change of address from Plaintiff, indicating that he was at a private address in Stoneboro, Pennsylvania. Dkt. [11]. Attorney Ninosky entered an appearance and filed, pursuant to Fed.R.Civ.P. 12(b)(6) a motion to dismiss on behalf of Dr. Wilcox and SHP (collectively, "the Moving Defendants"), Dkt. [15], and a brief in support. Dkt. [16]. On May 8,

---

his subsequent release from prison did not relieve him of his obligation under the PLRA to pay"). Accordingly, an order filed simultaneously with this report will require Plaintiff to either pay the entire filing fee immediately or apply for
non-prisoner in forma pauperis status.

2007, Plaintiff filed a motion for preliminary injunction, in which he sought an order from this court directing that Plaintiff receive certain medication and to be housed in the Armstrong County Jail. Dkt. [18]. On May 10, 2007, the Moving Defendants filed a response, Dkt. [25] in which they pointed out that Plaintiff is no longer housed in BCP and so the request for injunctive relief is moot. In addition, they attached to the response copies of Plaintiff's medical records from Plaintiff's time in BCP. Dkts. [25-2] to [25-5]. Plaintiff filed a response in opposition to the Moving Defendants' Motion to Dismiss. Dkt. [28].

**Standard of Review**

As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), a complaint may properly be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Under this standard, the court must accept as true all factual allegations of the Complaint and all reasonable inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 127 S. Ct. at 1965 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Under Rule 12(b)(6), courts may consider, in addition to the complaint, matters of public record and other matters of which a court may take judicial notice, Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994). In addition, the Court of Appeals in

Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004), held that "defendant may submit an indisputably authentic [document] to the court to be considered on a motion to dismiss[.]"

The question to be resolved is: whether, taking the factual allegations and all reasonable inferences to be drawn therefrom, are the "factual allegations . . . enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]" Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-1965 (2007). Or put another way, a complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Id. at 1974.

In addition, because Plaintiff is a prisoner proceeding in forma pauperis, the screening provisions of 28 U.S.C. § 1915(e) apply. Furthermore, because Plaintiff is a prisoner who has brought an action with respect to prison conditions, the screening provisions of 42 U.S.C. § 1997e(c) apply. Pursuant to these screening provisions, a court is obliged to sua sponte dismiss complaints that are frivolous, malicious or that fail to state a claim upon which relief can be granted. The court's obligation to dismiss a complaint under the PLRA screening provisions is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless sua sponte rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. See Lopez.

**The Factual Allegations of the Complaint**

The complaint alleges the following. During the week of February 21, 2006, Plaintiff was briefly examined by Dr. Wilcox for complaints about dizziness, chest pains and his diabetes. After a brief examination of Plaintiff, Dr. Wilcox informed Plaintiff that he had high blood

pressure and ordered 50mg. of Lopressor[2] at night. In the complaint, Plaintiff asserted that "knowing from previous experience, the proper proceedure [sic] was not taken to assess my condition and determine the proper dose of Lopressor . . . I refused to take it" on the first day but thereafter he did take it. Dkt. [8] at 6. The day after he was examined, a nurse came to Plaintiff to check his blood pressure but he refused, because "the Doctor was not present" and Plaintiff "didn't feel she was qualified to be assessing my medical condition" of high blood pressure. Dkt. [8] at 6. In June of 2006, Plaintiff was taken to the hospital and informed there that he now had low blood pressure and he was taken off Lopressor.

Plaintiff next alleges that during the week of April 29, 2006, Plaintiff was again seen by Dr. Wilcox for his chest pains and diabetes. Plaintiff's medications were not changed, despite the fact that his blood sugars were running from 200 to 400. When Plaintiff was eventually taken to the hospital in late June, the Doctor there allegedly told Plaintiff that Plaintiff's blood sugar level was at 11.0 and it should not have gotten higher than 5.0 and that "Dr. Wilcox should have helped [Plaintiff] long before this." Dkt. [8] at 8.

Plaintiff next alleged that in the first week of June 2006, Dr. Wilcox called Plaintiff to see him. Dr. Wilcox told Plaintiff that he had ordered Plaintiff's insulin to be increased due to Plaintiff's continually high blood sugar readings. As Plaintiff was leaving, he asked if he had to

---

[2] The Court takes judicial notice of the fact that Lopressor, also known as Hydrochlorothiazide, has been described as "a 'water pill,' [that] is used to treat high blood pressure and fluid retention caused by various conditions, including heart disease. It causes the kidneys to get rid of unneeded water and salt from the body into the urine." In addition, "Hydrochlorothiazide may also be used to treat patients with diabetes insipidus and certain electrolyte disturbances and to prevent kidney stones in patients with high levels of calcium in their blood." This information is taken from the federal government's National Institute of Health's online website known as "Medline Plus" available at

http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a682571.html#other-uses

pay the $8.00 fee for the visit and was told yes. He refused to do so, and was later told by a nurse that because Plaintiff refused to pay the fee, Dr. Wilcox refused to increase Plaintiff's insulin.

Plaintiff notes that on June 21, 2006, Plaintiff was admitted to Butler Hospital for a sugar reading over 500.

Plaintiff next alleges that he took this matter to the local courts, meaning the Butler County Court of Common Pleas "via a motion to receive the proper doses of medication. This motion was denied by Judge Shaffer at Court-room # 2 at 11:30 a.m. The motion was denied." Dkt. [8] at 11.

After Plaintiff returned to the Jail, the nurse informed Plaintiff that Dr. Wilcox would not be changing his medicine, nor would he be getting his blood sugar levels checked more than once a day. Plaintiff alleges that Dr. Casey at the hospital recommended Plaintiff's blood be checked four times a day and that he should be on a sliding scale for his insulin. This was not done according to Plaintiff.

On June 26, 2006, when Plaintiff's blood sugar was high, Dr. Wilcox ordered an additional dose of insulin of 10 mg. twice a day, which Plaintiff continued to receive at least until he filed the complaint. Plaintiff alleges that his blood sugars were not checked sufficiently.

Plaintiff's last complaint is that Plaintiff was discharged from the Butler County Hospital in late June of 2006 and as of August 2006, Plaintiff had still not been seen by Dr. Wilcox at the BCP.

Plaintiff alleges that the foregoing violated his Eighth Amendment rights.

**Discussion**

1. **Eighth Amendment**

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."[3] The Supreme Court has explained that analysis of a violation of the Eighth Amendment involves a two pronged inquiry: (1) an objective inquiry into the qualitative nature of the harm suffered by the victim of the alleged punishment and (2) a "subjective inquiry" into the mind of the person inflicting the harm. See Wilson v. Seiter, 501 U.S. 294 (1991). Accord Sims v. Artuz, 230 F.3d 14, 21 (2d Cir. 2000)("A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components–one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect.").

Furthermore, in cases involving the alleged denial of medical care, the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104 (internal quotations omitted). The Court has held that "deliberate indifference" occurs when a prison "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Farmer v. Brennan,

---

[3] Technically, the Eighth Amendment applies to the states through the Fourteenth Amendment. See Estelle v. Gamble, 429 U.S. 97, 101-02 (1976) (citing Robinson v. California, 370 U.S. 660 (1962)). The standards of the Eighth Amendment barring the federal government from inflicting cruel and unusual punishments are the standards applicable to the States through incorporation by the Fourteenth Amendment's due process clause. See Sistrunk v. Lyons, 646 F.2d 64, 66-67 (3d Cir. 1981)(citing Robinson v. California). The standards under the Eighth Amendment and the standards under the Fourteenth Amendment are fundamentally identical. Furman v. Georgia, 408 U.S. 238, 422 n.4 (1972)(Blackmun, J., dissenting) ("the tests for applying these two provisions are fundamentally identical."). In light of this, the Court understands Plaintiff's invocation of both the Eighth and Fourteenth Amendments, Dkt. [8] at 2, ¶III, to be merely invoking the Eighth Amendment standards as incorporated in the Fourteenth Amendment. Given this, the court will not separately analyze the Eighth and Fourteenth Amendments. Rather the court will analyze Plaintiff's claims only under the standards of the Eighth Amendment.

511 U.S. 825, 837 (1994). As a corollary of the deliberate indifference standard, mere negligence by staff at the prison, medical personnel and physicians in treating prisoners is not sufficient to state an Eighth Amendment violation. Estelle, 429 U.S. at 105-06. The Supreme Court has held that

> in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

Id.

Even taking Plaintiff's factual allegations in a light most favorable to him, it is clear that the complaint alleges nothing more than negligence for the most part against Dr. Wilcox.

The first incident Plaintiff complains of occurring in February 2006 reveals at most that Dr. Wilcox performed a perfunctory examination of Plaintiff and, in response to Plaintiff's complaints and as a result of the examination, Dr. Wilcox ordered Lopressor at night. This presumably was meant to address the dizziness and chest pains Plaintiff complained of. Such allegations at most rise to the level of negligence. See Unterberg v. Correctional Medical Systems, Inc., 799 F.Supp. 490 (E.D. Pa. 1992). In Unterberg, a plaintiff-prisoner claimed that the treatment she received was perfunctory and, therefore, constituted an Eighth Amendment violation. Id. at 495. In rejecting this claim, the Court concluded that perfunctory treatment, although it might constitute medical malpractice, does not amount to a constitutional violation. The court noted that

> [i]n Hampton [v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976)], the Third Circuit made clear that medical malpractice alone will not give rise to an Eighth Amendment claim. Hampton specifically states:
>
>> to establish a constitutional violation, the indifference must be deliberate and the actions intentional.... Neglect, carelessness or malpractice is more properly the subject of a tort action in the state courts.

Id. at 497. In the instant case, at most, Plaintiff's complaint establishes perfunctory treatment that amounts to no more than medical malpractice or negligence and not deliberate indifference.

This same reasoning applies to the alleged incident in April 2006, when Plaintiff was again examined by Dr. Wilcox, albeit allegedly in a perfunctory manner, and Dr. Wilcox did not change Plaintiff's medications. At most this amounts to negligence and hence, this claim must be dismissed.

As to the incident complained of in the first week of June where Dr. Wilcox called Plaintiff to be examined and told him that he would increase Plaintiff's insulin due to Plaintiff's blood sugar tests being high, such does not evince deliberate indifference, quite the contrary, such evinces a concern for Plaintiff's health and well being. In contrast, the alleged fact that Dr. Wilcox thereafter failed to do so, is sufficient to state a claim of deliberate indifference. Specifically, this claim alleges that Dr. Wilcox, believing it to be medically prudent to increase Plaintiff's insulin decided not to do so after all for a non-medical reason, i.e., because Plaintiff refused to pay. The court, is obliged to accept this factual account as true at this stage and nothing in the indisputably authentic medical records undermines these allegations. In fact, there do not appear to be any orders from Dr. Wilcox in early June increasing Plaintiff's insulin, assuming of course that Dr. Wilcox did believe Plaintiff's insulin should have been increased and assuming that Dr. Wilcox denied the increase due to Plaintiff's failure to pay.

The fact that Plaintiff was admitted to Butler County Hospital at the end of June with a high blood sugar, coupled with the "fact" that Dr. Wilcox allegedly believed Plaintiff should have received higher doses of insulin but did not order the increase given Plaintiff's refusal to pay for the last visit, is sufficient to withstand the motion to dismiss at this procedural juncture. This is a classic example of denying medical treatment (i.e., the perceived need for an increase in insulin) for non-medical reasons (i.e., Plaintiff's refusal to pay for his medical visit). See Lee v. Sewell, 159 Fed.Appx. 419, 421 (3d Cir. 2005)("Short of absolute denial, if necessary medical treatment [i]s ... delayed for non-medical reasons, a case of deliberate indifference has been made out." (quoting Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987)(internal quotation omitted)).[4]

However, Plaintiff's allegations that Dr. Wilcox changed his medications upon his return to the jail after being released from the hospital does not state a claim of deliberate indifference because it amounts at most to a disagreement with the hospital doctor over which medications Plaintiff should be receiving and over how frequently Plaintiff should undergo blood sugar level testing. Watkins v. Cape May County Correctional Center (Medical Dept.), __ Fed.Appx. __, 2007 WL 2088734, *1 (3d Cir. 2007)("A physician does not act with deliberate indifference

---

[4] If, at the summary judgment stage, Dr. Wilcox intends to rely on the medical records of Plaintiff, he should be certain that they are properly copied such that the entire page is visible. For example, some pages indicating medication administration are cut off at the bottom such that one cannot read the month for which the page is applicable. Dkt. [25-3] at 15. In addition, any writing that is not clearly attributable to an individual should be indicated via affidavit. For example, the writing at the bottom of page 6 of Dkt. [25-4], indicating that "if he takes the Glucophage the Lantus will work better. . ." is unsigned; presumably, this is Dr. Wilcox's writing, explaining why he did not prescribe exactly what the hospital doctor prescribed for Plaintiff. In addition, any writing that is not legible should be explained by affidavit. For example, at p. 9 of Dkt. [25-4], entry dated June 6, which may be a critical date, is illegible and Dr. Wilcox should provide a legible printed version of exactly what was written and then should explain by affidavit what is meant by what was written. The same can be said of the writing at p. 12 of Dkt. [25-4]. It should not be assumed that the Court is familiar with medical terms or abbreviations, which should be defined and/or explained. The foregoing applies only to those sections of the record that Dr. Wilcox intends to rely on in summary judgment.

merely by disagreeing with the professional judgment of another doctor if the challenged treatment is one of several acceptable ways of addressing the patient's medical needs."). Here, the indisputably authentic medical records attached to the Moving Defendants' response to Plaintiff's request for preliminary injunction demonstrate that the medications and treatment ordered, i.e., Glucophage,[5] Lantus insulin, and an accucheck of blood sugar levels "Q.D. before breakfast," was one of several acceptable ways of addressing the Plaintiff's diabetes, at the very least, it cannot be said that such treatment amounts to deliberate indifference. Dkt. [25-3] at 22.

Lastly, as to the final complaint Plaintiff makes, namely that after he was returned from the Hospital in late June, Dr. Wilcox had not personally examined him even until August, such does not state a claim of deliberate indifference, especially when the indisputably authentic medical records show that he was being seen by the nurses and his blood sugar levels were being checked roughly two to three times a day, throughout the month of July and those levels appear to have ranged from a high of 374 to a low of 70. Dkt. [25-3] at 16.

Accordingly, all of Plaintiff's Eighth Amendment claims against Dr. Wilcox should be dismissed for failure to state a claim except for the claim that in early June Dr. Wilcox deliberately withheld an increase dosage of insulin because Plaintiff refused to pay for the doctor

---

[5] The Court takes judicial notice that Glucophage is also known as "Metformin" and that

> Metformin is used alone or with other medications, including insulin, to treat type 2 diabetes (condition in which the body does not use insulin normally and, therefore, cannot control the amount of sugar in the blood) . Metformin helps to control the amount of glucose (sugar) in your blood. It decreases the amount of glucose you absorb from your food and the amount of glucose made by your liver. Metformin also increases your body's response to insulin, a natural substance that controls the amount of glucose in the blood.

The above information is available at:

http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a696005.html

visit and consequently, Plaintiff suffered very high blood sugars to the point where in late June he had to be hospitalized.

Next, the Moving Defendants point out that the complaint fails to allege any specific facts against SHP and that Plaintiff is attempting merely to impose liability upon SHP via the theory of respondeat superior. Moving Defendants are correct.

The general rule in Section 1983 cases, such as this one, is that a "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "Respondeat superior is a doctrine of vicarious liability based upon public policy [and] the notion that the person who benefits by the acts of the servant must pay for wrongs committed by the servant; the one held liable as master need not be at fault in any way." McClelland v. Facteau, 610 F.2d 693, 695 (10th Cir. 1979). Hence, the only way a defendant can be liable under Section 1983 is based upon facts showing that the defendant was personally involved in depriving the civil rights of the plaintiff, i.e., personally engaged in wrongdoing. Moreover, it is the Plaintiff who has the burden to show that the defendants personally participated in violating his constitutional rights. See, e.g., Thomas v. Conway, 2005 WL 2030304 at*5 (M.D.Pa. July 21, 2005)("in order to sustain a claim against an individual pursuant to § 1983, a plaintiff's burden is to show that the individual had 'personal involvement in the alleged wrongs'"); Mabine v. Vaughn, 25 F.Supp.2d 587, 592 (E.D.Pa. 1998)(same).

That the Plaintiff seeks to hold SHP liable solely on the basis of respondeat superior is made abundantly clear in his response to the Motion to Dismiss. See, e.g., Dkt. [28] at 21 ("A company is responsible for the actions of thier [sic] employese [sic]."). Accordingly, all claims against SHP should be dismissed.

Similarly, Plaintiff makes no factual allegations against BCP itself. Although BCP does not appear to have been served, and hence, has not filed anything, all claims against BCP should be dismissed pursuant to the PLRA in as much as Plaintiff is apparently seeking to hold BCP liable solely upon the basis of the actions of its putative agents, or in other words, based on respondeat superior, which is not a permissible basis. Indeed, there are no factual allegations contained against BCP specifically in the complaint. Hence, BCP should be dismissed as a party defendant in this case pursuant to the screening provisions of the PLRA.

### 2. The Injunctive Relief Claims are Moot

Plaintiff requested that this court issue injunctive relief via his motion for preliminary injunction. Dkt. [18]. However, Plaintiff has been released from the Butler County Prison and, hence, his claims for injunctive relief are moot. The rule is that where a plaintiff seeks injunctive relief for prison conditions that he is no longer subject to, there is no longer a live controversy and a court cannot grant that injunctive relief. See Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir. 1993); Fortes v. Harding, 19 F.Supp.2d 323, 326 (M.D.Pa. 1998); Marrie v. Nickels, 70 F.Supp.2d 1252, 1259 (D.Kan. 1999) ("Generally, an inmate's transfer to another prison or release moots his request for declaratory or injunctive relief.") (collecting cases); Chapdelaine v. Keller, No. 95-CV-1126, 1998 WL 357350, at *4 (N.D.N.Y. April 16, 1998) ("plaintiff is no longer incarcerated at Ray Brook and is no longer housed in a four person cell. He is not subject to any real or imagined 'threats, intimidation, or harassment' by the Ray Brook staff. Furthermore, there is no indication that plaintiff's transfer to McKean is temporary or that he will return to Ray Brook. Consequently, plaintiff's request for an injunction that restrains Ray Brook officials from violating his civil rights is moot and should be dismissed...."). Hence, the injunctive relief claims should be dismissed against all of the Defendants.

CONCLUSION

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

        Respectfully submitted,

        /s/ *Amy Reynolds Hay*
        United States Magistrate Judge

Dated: 3 December, 2007

cc:    The Honorable Terrence F. McVerry
       United States District Judge

       John Edward Gallagher
       25 Lake St. Apt. #205
       Stoneboro, PA 16153

       All counsel of record by Notice of Electronic Filing